IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LIZZIE M. KEENE           )
                          )
       Plaintiff,         )
                          )
   v.                     )   No. 13 C 3521
                          )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
                          )
       Defendant.         )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Lizzie M. Keene's (Keene) motion for summary judgment and Defendant Social Security Administration's (SSA) motion for summary judgment. For the reasons stated below, SSA's motion is denied, Keene's motion is granted in part, and this matter is remanded to SSA for further proceedings consistent with this opinion.

## BACKGROUND

In February 2010, Keene applied for disability insurance benefits and Supplemental Security Income. Keene's application was denied and then denied again on reconsideration. Keene then requested an evidentiary hearing before an Administrative Law Judge (ALJ). After a hearing on December 12, 2011 (Hearing),

the ALJ denied the claim, and the Appeals Council denied Keene's request for review. Keene subsequently filed the instant action on May 10, 2013. Keene has filed a motion for summary judgment, seeking to have the ALJ's decision reversed and remanded for an award of benefits, and seeking in the alternative to have this case remanded to the ALJ for further proceedings to correct errors made by the ALJ. SSA has filed a motion for summary judgment seeking to have the ALJ's decision affirmed.

**LEGAL STANDARD**

Pursuant to 42 U.S.C. §405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

**DISCUSSION**

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the

ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as her age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, he is not disabled." *Id.*

In the instant appeal, Keene argues: (1) that the ALJ erred in weighing the opinion of Keene's treating physician, (2) that the ALJ erred in determining Keene's RFC, (3) that the ALJ erred in evaluating the credibility of Keene, and (4) that the ALJ erred by making independent medical findings.

I. Opinion of Treating Physician

Keene argues that the ALJ failed to give adequate weight to the opinion of her treating physician, Dr. Matthew Kalscheur (Kalscheur). The opinion of a treating physician "is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record." *Bates v. Colvin*, 736 F.3d 1093, 1099-00 (7th Cir. 2013). If the opinion of the treating physician "is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it," but "once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer

3

entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Id.* (internal quotations omitted)(*Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)). An ALJ must "give 'good reasons' for not giving the well-supported opinion of a treating physician 'controlling weight. . . .'" *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011)(quoting 20 C.F.R. § 416.927(d)(2)).

Kalscheur, who treated Keene on several occasions, found that Keene suffers from "severe knee pain and weakness." (AR 394). Kalscheur also found that Keene suffers from depression to an extent that it affects her physical condition. (AR 394). In addition, Kalscheur found that during a typical workday, Keene would frequently experience pain or other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (AR 394). Kalschuer also estimated that Keene was likely to be absent from work an average of three days a month as a result of her impairments or treatment. (AR 395). Kalschuer further made certain specific findings concerning Keene's ability to sit, stand, walk, and carry weight. (AR 395-94).

The ALJ stated that she did not "assign controlling or great weight to the opinion of Dr. Kalscheur, who opined that [Keene] could sit about 2 hours a day, stand less than 2 hours a day, and had other work-related limitations. . . ." (AR 24). The ALJ stated that such "extreme limitations are inconsistent with the evidence of record, including [Keene's] own reports of the work that she was doing. . . ." (AR 24). The ALJ referenced "normal findings on examination," but failed to address how Kalschuer's opinion was inconsistent with evidence in the record showing, for

4

example, severe degenerative problems in Keene's knees. (AR 24, 282-83, 310-11). The ALJ also failed to adequately explain why she declined to accept Kalscheur's opinion that Keene suffered from depression, which impacted her functional capacity. (AR 24, 394).

The ALJ stated that Kalscheur's opinion as to Keene's limitations were inconsistent with Keene's "own reports of the work that she was doing" at her place of employment. (AR 24). However, there is no indication that the ALJ looked beyond the general fact that Keene had engaged in some part-time employment. To the extent that the ALJ referenced Keene's "own reports" about her part-time work that indicated an increased capacity to work, it is unclear what "reports" the ALJ was referring to in her decision. Keene testified at the Hearing that when she was unable to stand any longer at work, she was allowed to sit and given paper work. (AR 42). Keene also testified that when Keene was in "a lot of pain" at work and was "in tears," Keene was actually "sent home." (AR 42). The ALJ failed to adequately explain why she failed to give controlling weight to a physician who had personally examined Keene and had a treatment history with Keene. The ALJ also did not specify that she had considered the checklist, (AR 24), which she was required to consider upon concluding that she would not give controlling weight to a treating physician. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010)(stating that "[e]ven if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion" and must consider a specific "checklist"). Although the ALJ erred in examining Kalscheur's

5

opinion, Keene has not shown at this juncture that Kalscheur's opinion is entitled to controlling weight. On remand, the ALJ should reevaluate the evidence provided by Kalscheur together with the other evidence of record and determine what weight should be accorded to Kalscheur's opinion, and adequately explain the basis for her conclusion.

II. RFC Determination

Keene argues that the ALJ erred in determining Keene's RFC, by failing to base her assessment on evidence and by failing to consider Keene's impairment in combination. The RFC determination "is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ must base the RFC determination "on all the relevant evidence in the record." *Id.*; *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)(stating that an ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence"); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010)(stating that "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment").

The ALJ concluded that Keene "has the residual functional capacity to perform sedentary work . . . except no climbing of ladders, ropes or scaffolds, and no

kneeling or crawling," that Keene "can only occasionally stoop and climb ramps and stairs," that Keene "is limited to no concentrated exposure to heights, hazards, respiratory irritants, temperature extremes, or humidity," and that Keene "is limited to a sit/stand option that allows her to change positions every 45 minutes for 5 minutes at a time." (AR 17).

The ALJ, in determining Keene could perform sedentary work, rejected the state agency physician's conclusion that Keene was capable of sustaining work at a light exertional level, and also rejected Kalscheur's opinions that Keene was not capable of sustaining work at any exertional level. (AR 23-24). Although the ALJ made reference to medical evidence in the record, the ALJ failed to adequately explain the evidentiary basis for her RFC assessment. *See Pepper*, 712 F.3d at 362 (stating that "[i]n rendering a decision, an ALJ must build a logical bridge from the evidence to h[er] conclusion")(internal quotations omitted)(quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). The Seventh Circuit has explained that "an ALJ may not rely on a hunch" in place of evidentiary support. *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003)(indicating that "a claimant is entitled to a decision based on the record rather than on a hunch").

Keene also argues that the ALJ failed to consider the combination of Keene's impairments, such as obesity, in determining Keene's RFC. Although the ALJ made references to Keene's struggle to deal with her weight, the ALJ failed to specifically explain how such obesity factored into the RFC determination. The ALJ also failed to specifically explain how the combination of Keene's impairments, including

7

obesity factored into the RFC determination. On remand, the ALJ should conduct an appropriate RFC analysis.

III. Credibility Determination

Keene argues that the ALJ erred in evaluating the credibility of Keene. Credibility assessments made by an ALJ are given "special, but not unlimited, deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(stating that "[t]he ALJ must consider a number of factors imposed by regulation, . . . and must support credibility findings with evidence in the record"); *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)(stating that "[a]n ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results"). The ALJ stated that she did not find Keene's claims as to her limitations to be credible because while Keene "has some limitations, she continues to engage in a wide array of daily activities," such as part-time work, water aerobics, and other exercise. (AR 22). The ALJ also noted that Keene indicated that she takes her daughter to and from school, traveled to Wisconsin on one occasion, and has certain hobbies such as poetry and working on puzzles. (AR 22). The ALJ also found Keene lacked credibility because she was "getting unemployment benefits, which require her to certify that she was ready and willing to work." (AR 22). The ALJ also separately commented on Keene's claimed limitations stating that "the allegations of disabling limitations are not credible." (AR 19).

The ALJ failed to adequately explore the exertional details of all the activities engaged in by Keene, which the ALJ found to be inconsistent with Keene's claims as to her limitations. Nor did the ALJ tie such exertional details to Keene's capacity to perform work, which was the relevant issue before the ALJ. For example, there is no indication that the ALJ explored what type of exertion was required for the water aerobics or why Keene's ability to participate in such a class showed that her claims as to limitations were not credible. (AR 22, 46). In fact, the record indicates that it was Kalscheur, who was familiar with Keene's severe physical aliments and treated her for such ailments, who recommended that Keene enroll in such a water aerobics class as therapy for her obesity. (AR363). Keene's attempts to rehabilitate, in and of itself, does not show that Keene's claims are not credible. The ALJ also failed to adequately distinguish between such rehabilitative daily activities and the type of required performance that would be expected in a full-time paying job. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)(stating that "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer").

The ALJ also failed to explore how Keene's daily activities and hobbies were inherently inconsistent with Dr. Meyers' (Meyers) opinion that Keene suffered from major depressive disorder. (AR 22, 397). For example, the ALJ pointed out that Keene "enjoys writing poetry, and working jigsaw and crossword puzzles"

9

apparently as a basis to discount Keene's claims as to depression and mental impairments. (AR 22, 49). However, the ALJ failed to explore the extent that Keene was actually able to engage in such activities or explain why the ability to engage in such activities shows that one is not suffering from the level of depression claimed by Keene and documented by Meyers. (AR 22).

The ALJ also found Keene to lack credibility because she traveled to Wisconsin on one occasion. (AR 22, 38). However, there is no indication that the ALJ adequately explored the physical requirements associated with such travel on one occasion. (AR 22). Nor did the ALJ explain why that one-time event was a proper indicator of Keene's ability to engage in work on a long-term basis. (AR 22).

The ALJ also held that although there was some evidence of pain, "[t]o the extent that [Keene] alleges additional limitations, treatment records do not support her allegations." (AR 23). Keene offered testimony explaining how she was in constant severe pain and how her knees felt as though they were going to buckle at times. (AR 42-45). The record also shows that it was recommended by medical professionals that Keene should receive viscosupplementation to address the degenerative condition in her knees. (AR 44-45, 282-83, 422). Although the ALJ pointed to certain evidence in the record, she failed to adequately address why Keene's claims as to severe pain were not credible.

The ALJ also improperly discounted Keene's credibility merely because she was on unemployment. The fact that Keene expressed a desire to work and may, during financial difficulty, have indicated an ability to work in seeking

unemployment benefits should not have been held against Keene absent further investigation into the circumstances by the ALJ. *See Wallace v. Astrue*, 2012 WL 3598737, at *12 (N.D. Ill. 2012)(stating that an ALJ should consider whether the applicant "sought unemployment benefits out of financial need and did not believe himself capable of holding down a job"). Finally, Keene correctly points out that the ALJ failed to adequately explain whether she considered the side effects of Keene's medication in evaluating her credibility. On remand, the ALJ should reevaluate Keene's credibility and adequately explain any conclusions.

IV. Independent Medical Findings

Keene argues that the ALJ erred by making independent medical findings. An ALJ cannot "substitut[e] her own judgment for that of a medical professional" and make independent medical findings. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); *see also Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009)(stating that the "ALJ impermissibly 'played doctor' and reached his own independent medical conclusion"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)(stating that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). The ALJ gave "no weight" to the opinion of Meyers, concluding that the extreme mental limitations found by Meyers were inconsistent with treatment notes and GAF score. (AR 24). However, given the ample evidence in the record concerning Keene's mental impairments, it was incumbent on the ALJ to seek guidance from a medical professional on such an issue if the ALJ would discredit

such medical evidence. SSA acknowledges that the ALJ proceeded in the absence of the guidance of a mental health medical professional to make conclusions concerning Keene's mental impairments and how such impairments impacted Keene's capacity to work. (D SJ. 13). Such independent medical conclusions on the part of the ALJ were improper. On remand the ALJ should refrain from making such independent medical findings or conclusions and should seek further guidance from mental health professionals if the ALJ believes that the evidence by other medical professionals is inconclusive as to Keene's mental limitations.

## CONCLUSION

Based on the foregoing analysis, SSA's motion is denied, Keene's motion is granted in part, and this matter is remanded to SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 24, 2014